[No. 2668. April 19, 1923.]

## STATE v. DAVISSON.

[Rehearing Denied Aug. 24, 1923.]

(1) Under section 1546, Code 1915, a demand by some person lawfully entitled to make the same, and a failure to pay over the money, is necessary, both by way of allegation and proof, in order to show embezzlement by a public officer.
·   P. 656.

(2) The above section of the statutes requiring a lawful demand, and making such demand an essential of the offense charged, contemplates an effectual demand, that is, one satis-fied by payment, and acknowledges the right of the officer upon whom the demand is made to receive a legal receipt for what is paid over, and a proper test of the lawfulness of the demand, so far as the proper officer for that purpose is concerned, is the authority of such officer to receive, and under the statutes of New Mexico, consequently, the treasurer of the county is the only officer capable of making a legal demand upon the treasurer out of office for sums withheld and due.   P. 656.

(3) Under section 1283, Code 1915, relative to the settle-ment to be made between the outgoing treasurer and the in-coming treasurer, while an accounting is to be made between the outgoing treasurer and the board of county commissioners in the presence of the county clerk, the manner directed of making such settlement looks only to the security of the finances of the county; the substance of the act required to be performed is the payment over by the outgoing treasurer to the incoming treasurer of all the moneys and effects in the custody of the former; the obligation so defined is a continuing one and survives until fully performed, and implies the authority of the incoming treasurer to demand what he alone has the right to receive.   P. 657.

(4) Section 5075, Code 1915, relative to imposition of sentence in felony cases, is not, strictly speaking, an indeter-minate sentence law. The interval of time intervening be-tween the minimum sentence and the maximum sentence is a matter which rests solely within the discretion of the trial judge, and a sentence of not less nor more than three years is not violative of the requirements of the statute, since such sentence is not less than the minimum term nor greater than the maximum term provided under the statute upon which the indictment was drawn and sentence imposed.   P. 662.

(5) A later statute does not repeal, by implication, a for-mer statute where, though both offenses relate to the same crimes and are similar, they are not so identical as to reveal an intent on the part of the Legislature to repeal.   P. 664.

(6) A motion to quash an indictment performs substan-tially the office of a demurrer, and reaches only such errors complained of as appear upon the face of the record, and

where matters dehors the record are complained of, they can be reached only by plea in abatement.        P. 665.

Appeal from District Court, Curry County; Bratton, Judge.

Ben C. Davisson was convicted of embezzlement, and he appeals. Affirmed.

L. O. Fullen, of Roswell, I. S. Epstein, of El Paso, Tex., and C. J. Roberts, of Santa Fé, for appellant.

Harry S. Bowman, Atty. Gen., A. M. Edwards, Asst. Atty. Gen., and Milton J. Helmick, Atty. Gen., for the State.

### OPINION OF THE COURT.

RYAN, District Judge. The appellant was tried and convicted of embezzlement and sentenced to not less than and not more than three years in the penitentiary, from which judgment this appeal is taken.

The material allegations in the indictment may be summarized as follows: From January 1, 1917, to November 14, 1920, the appellant was the duly elected, qualified, and acting county treasurer and ex officio collector of Chaves county; that, as such treasurer and ex officio collector, he was intrusted with the collection, safe-keeping, receipt, disbursement, and transfer of taxes, revenues, fines, and other moneys of the county of Chaves and state of New Mexico; that on November 15, 1920, the appellant resigned and surrendered his office as treasurer and ex officio collector as aforesaid; and that on said 15th day of Nevember, 1920, one W. W. Ogle was by the board of county commissioners of the county of Chaves, duly appointed to the office of treasurer and ex officio collector to serve during the unexpired term of appellant; that said W. W. Ogle thereupon was duly commissioned, and duly qualified, and entered upon the discharge of the duties of the said office as the successor of the appellant; that on the 2d day of November, 1920, the said Ogle was duly elected to the said office of treasurer and ex officio collector for a term of two years ending on the 1st day

of January, 1923, duly qualified as such officer, and on January 1, 1921, entered upon, and continued the discharge of the duties of the said office and still holds the same; that on said November 14, 1920, the appellant, as such treasurer and ex officio collector, had in his possession taxes, revenues, fines, and other moneys belonging to the said county of Chaves, and state of New Mexico, in the sum of $49,446.70; that on January 31, 1921, the said W. W. Ogle, as such duly elected, qualified, and acting treasurer and ex officio collector of Chavez county, and being the successor in such office of the appellant, demanded of the appellant that he pay to him, the said Ogle, the said moneys, being taxes, revenues, fines, and other moneys belonging to the said county of Chaves and the state of New Mexico then in his possession; that the appellant was unable to respond to the said demand, and he failed and refused, and has, ever since, failed and refused to pay over to the said Ogle as such treasurer and ex officio collector the said moneys so due to the county of Chaves, and state of New Mexico, and did unlawfully, knowingly, willfully, fraudulently, and feloniously convert the same to his own use and benefit, and did thereby embezzle such money.

The indictment is drawn under section 1546, Code 1915, which is as follows:

"If any person, having in his possession any money belonging to this state, or any county, precinct or city, or any collector or treasurer of any precinct or county, or the treasurer or disbursing officer of this state, or any other person holding an office under the laws of this state, to whom is intrusted by virtue of his office, or shall hereafter be intrusted with the collection, safe-keeping, receipt, disbursement, or the transfer of any tax, revenue, fine, or other money, shall convert to his own use, in any way or manner whatever, any part of said money, or shall loan with or without interest, any part of the money intrusted to his care as aforesaid, or willfully neglect or refuse to pay over said money, or any part thereof, according to the provisions of law, so that he shall not be able to meet the demands of any person lawfully demanding the same, whether such demand be made before or after the expiration of his office, he shall be deemed and adjudged to be guilty of an embezzlement."

[1]    This section was twice before the territorial court. · In Territory v. Hale, 13 N. M. 181, 81 Pac. 583, 13 Ann. Cas. 551, the defendant was not a public official, but he embezzled public money. The court declined to decide in that case whether a demand for the money by some person lawfully entitled to make the same, and failure to pay over the money, was in all cases necessary to complete the offense in cases of embezzlement by public officers. However, in Territory v. Abeyta, 14 N. M. 56, 89 Pac. 254, the question was squarely raised as to whether demand and failure to pay over by a public officer was necessary to complete the offense, and it was held that such demand and failure to pay was a necessary allegation of the indictment in order to charge the offense. With the wisdom of the statute we are not concerned. The Legislature has since abandoned this feature. Chapter 32, Laws 1921. But we see no reason to depart from the interpretation heretofore given it. It may be considered settled then that a demand and failure to pay over the money is necessary, both by way of allegation and proof, before a public official can be convicted of embezzlement under this statute.

It is to be observed from the allegations of the indictment that the appellant was serving his second term as treasurer and ex officio collector of Chaves county, when, on November 15, 1920, he resigned his office; that thereupon his successor was appointed, who duly qualified and served until· January 1, 1921, under such appointment; that at the November election, 1920, this successor was elected to the office for the term beginning January 1, 1921, and duly qualified as such officer, and that on January 31, 1921, the demand was made by him as the then treasurer and ex officio collector upon the appellant for the funds alleged to have been in his possession at the date of his resignation.

[2]    The objection to the propriety of the conviction of appellant with which we are mainly concerned is

that raised by appellant's counsel in their argument, to the effect that the demand alleged in the indictment and supported by the proof is insufficient. This objection was not raised in the trial court; nevertheless, it is considered here, because it is jurisdictional.

The inquiry which determines the validity of the argument of appellant is, Was the demand alleged in the indictment a lawful demand? The negative of the proposition is not established, it is evident, by the admission that some other person than the one charged in the indictment could have made a lawful demand. The indictment is good if, subjecting the statute to a strict construction, the succeeding county treasurer comes within the limiting phrase, "lawfully demanding," imposed upon the general terms employed, namely, "Any person." In general, the word "lawful" means according to law, or in conformity to some pertinent statute or settled rule of law; the precise meaning of the term varying according to the particular purpose in view (see Words and Phrases); so that the meaning given to the term here is to be determined by the context, and the purpose which the restriction with which it impresses the act done serves in this particular case. A diligent search of all the cases germane to the inquiry reveals that no state has a statute so nearly resembling ours that the decision construing it would cast any light upon the matter now under discussion. In those states where a demand is essential, the statute designates the officer who must make it, and the demand is then lawful when made by the officer described. Here the inverse order of inquiry prevails, the ascertainment of the proper officer rests upon the meaning attached to the adjective "lawful." It is true, our statute does not designate in express terms the succeeding treasurer as the person to make the demand; nor does it so designate the board of county commissioners, or any other person or body.

[3] We proceed, therefore, to discover from the context the object which the Legislature had in view

in imposing the requirement of a lawful demand. Obviously the demand specified, since it is an essential of the crime defined, and not merely a rule of evidence establishing the fact of conversion as it is in some states, contemplates an effectual demand, and the demand is effectual when it is met by proper satisfaction; that is, by payment to the person demanding of the amount demandable. It would seem, therefore, that the demand mentioned in the statute comprehends two factors, the county, whose money has been taken from it, and the official guilty of the wrongful conversion, due regard being had to the correlative rights and duties of each. Counsel for the appellant lay great stress upon the exclusive right and duty of the board of county commissioners as one of these factors, and their contention that the board of county commissioners alone can make a lawful demand upon a defaulting treasurer is not without some force. Such board is a legal entity; it is capable of suing and being sued; it is the governing body of the county; it has the power to represent the county in all cases where no other provision is made by law. Sections 1188, 1199, and 1201, Code 1915. It is required to organize as a board of finance, and as such designates the depositories of the moneys of which the treasurer is custodian. Chapter 57, Laws 1915, as amended by chapter 70, Laws 1917. It is granted that the authority reposed by statute in the board of county commissioners of the county, both by the general statute above enumerated and the statute set out in full, section 1283, Code 1915, infra, relative to the accounting between the board of county commissioners and the outgoing treasurer, carries with it such a corresponding duty on its part that, in the event money is converted by the outgoing treasurer as in this case, resort should be had promptly by it to effective means of recovery. Manifestly, the first step in this regard is a demand by it upon the defaulting ex-treasurer. But the matter may not be concluded by these observations and deductions, for the other party involved, that is the defaulting ex-treasurer, has

resting upon him, under the circumstances, a plain duty, which is to pay back; but this duty implies a right, assertable by him, which is to require of the person demanding, upon payment back, a good and sufficient receipt.

Section 1283, Code 1915, provides:

"When a county' collector goes out of office he shall make a full and complete settlement with the board of county commissioners, and deliver up, in the presence of the county clerk, all books, papers, money and all other property appertaining to the office, to his successor, taking his receipt therefor. The board of county commissioners shall make a statement, so far as state revenue is concerned, to the state auditor, showing all charges for whatsoever purposes which have been created against the collector during his term of office, and all credits that have been made, and other unfinished business charged over to his successor, and the amount of money paid over to his successor, showing to what year and to what accounts the amount so paid over belongs. They shall also see that the books of the collector are correctly balanced before passing into the posession of the collector-elect."

It is seen that, while this statute fixes responsibility upon the board of county commissioners to see to it that proper settlement is made by the outgoing treasurer, and requires that such settlement be made under circumstances tending to secure the financial interests of the county, the very substance of the act to be done is the delivery of the money and effects in the custody of the outgoing treasurer to his successor in office, for which delivery he is entitled to a receipt from such successor. The money in the custody of the outgoing treasurer is paid over, not to the board of county commissioners, but to the succeeding treasurer, and the receipt to which he is entitled is from the succeeding treasurer, and not from the board of county commissioners. The statute directs this act be done when the treasurer goes out of office, but certainly it cannot be seriously maintained that the outgoing treasurer is discharged from the obligation defined by the statute because it is not performed at the precise time specified. On the contrary, it is clear that the ob-

ligation on the part of the outgoing treasurer is a continuing one and survives until fully performed, and equally is it true that he is not required to pay to any one except the one by statute authorized to receive, receipt for, the money and effects paid by him. The inference is properly made that, if the succeeding treasurer alone has the right and authority to receive, he alone has the right and authority to demand.

The point urged by appellant's counsel that the board of county commissioners has the exclusive right to demand, because of the power as above stated upon such board of county commissioners, is an error into which one can easily be led by identifying the board of county commissioners, as the owner of the money converted, with natural persons or private corporations occupying the same position relative to an embezzleing agent. The identification is a fallacy. Ordinarily where, as in case of conversion by one rightfully possessing the money converted, a demand is necessary, it is uniformly held that the proper person to make the demand is the principal who is the owner of the money, or one duly authorized by him to act in the matter. It is true that in a certain sense, since the money converted, as alleged in the indictment, is county money, the owner of it is the board of county commissioners, but a careful analysis of the situation involved does not permit the element of ownership to justify the conclusion sought by appellant's counsel. The powers which boards of county commissioners may exercise with reference to the money and effects of the county, and with reference to the treasurer, who is the legal custodian of such moneys and effects, is expressly limited by statute. The statutory limitations preclude the board of county commissioners from asserting such rights in regard to the misappropriation of money by a defaulting treasurer that natural persons or private corporations may properly assert. The county is the owner of taxes paid, but the board of county commissioners cannot demand that such taxes, when due, be paid to any person other than the county

treasurer. It may demand a settlement with the county treasurer as specified in section 1283, supra, but when a settlement is made, a certain amount is found to be due, it may demand only that such amount be paid to the county treasurer. It has no authority to receive any moneys due the county, nor can it legally receipt for moneys paid. This reason also operates to withhold, from the conceded fact that the board is the party which alone can sue for sums due the county, the deduction that it alone may demand. Further, the board of county commissioners, being a corporation, can act only through an agent, so that the most the board could do in the case considered would be, by proper resolution, to authorize some agent to make the demand. If the agent is to make an effectual demand he must be entitled to receive, and, since the only person entitled to receive is the county treasurer, the argument of appellant's counsel settles down to the statement that the board of county commissioners should authorize and direct the county treasurer in office to make the demand upon the defaulting ex-treasurer. This adds nothing to their argument. The authority of the treasurer so to do is derived from statute, and not from any resolution or act of the board of county commisisoners, which can neither enlarge nor diminish such powers as the treasurer possesses. In case of State v. McKinney, in Supreme Court of Iowa, 130 Iowa, 370, 106 N. W. 931, the statute, among other things, requires a demand in these words:

"And in case he (the defaulting officer) fails or neglects to account therefor on demand of a person entitled thereto, he shall be deemed guilty of embezzlement."

The allegation of the indictment was:

"The defendant has failed and neglected to account, though demand has been made of the said Horace H. McKinney by the county aforesaid."

The court in its opinion evidently considered the "county" and "board of county commissioners" to be words of similar import. Arguing, the court said:

"We think, therefore, when he is indicted upon charge of having unlawfully and feloniously neglected or refused to honor a proper demand it is not enough to allege generally that the demand upon him was made by 'the county' but the indictment must specifically allege the name of the person or officer making the demand, and that he was the person entitled to receive the funds so demanded. * * * It is true that a county may for some purposes be considered a 'person' in law, but it is a corporate person which can speak and act only though its appropriate officers and agents, and the allegations that an act was done or notice given or demand made by 'the county' without explanation, conveys no information whatever to the bearer or reader as to the particular individual through or by whom the act, notice, or demand is alleged to have been effected."

It is clear, we think, that the proper test of the lawfulness of the demand considered above, under the statute denouncing the crime charged, and with reference to the general statutes defining the powers of the board of county commissioners, and with reference to section 1283, Code 1915, in regard to the accounting between the outgoing treasurer and the incoming treasurer, is the right and authority on the part of the person demanding to receive.

The appellant advances other arguments than those above noticed against the sufficiency of the allegation in the indictment in regard to the demand, but they may be dismissed without comment; what we have said sufficiently considering the point raised.

[4] The sentence imposed upon the defendant by the trial judge was for a term of not less than or more than three years. The validity of this sentence is challenged because violative, it is claimed, of what counsel for appellant style the "indeterminate sentence statute," section 5075, Code 1915:

"Every person who shall be convicted of a felony or other crime punishable by imprisonment in the penitentiary, if judgment be not suspended or a new trial granted, shall be sentenced to the penitentiary. The court in imposing such sentence shall fix the maximum and minimum duration of the same. The term of imprisonment of any person so convicted shall not exceed the maximum nor be less than the minimum term fixed by the court. The release of such person shall be determined as hereinafter provided."

It is urged by appellant, first, that the sentence, if in conformity to the statute, should have specified the minimum term, namely, one year, and the maximum term, namely, three years; the point of time during the interval at which the prisoner would be entitled to be discharged from the penitentiary depending upon his conduct there, and the action of the board of pardons and the Governor relative thereto. And, second, that even if the above conclusion is not correct, an appreciable interval of time between the minimum and maximum time should have been provided for, and that a sentence which necessitates the expiration of the minimum and maximum terms at the same time is a definite, and not an indeterminate, sentence. We see no merit in the first proposition. The statute plainly does not say what is contended for it, but it implies, on the contrary, that the discretion of the court controls the period of imprisonment, it being required only that such period be within the minimum and maximum term. The second proposition finds support in some cases. We note one, that of Ex parte Collins, 51 Mont. 215, 152 Pac. 40. The statute which the court had under consideration in the case referred to is in substance as the New Mexico statute. The term of imprisonment fixed by the jury was "at not less than two (2) nor more than two (2) years in the state prison." The court said, in holding this sentence invalid:

"Evidently, too, the conception of the Legislature as indicated by the use of the term 'indeterminate,' was that the minimum and maximum terms fixed should be so adjusted as to allow a substantial period of time to intervene during which the application for parole might be made, and the Governor and board of prison commissioners might determine its merits by inquiry touching the conduct of the applicant, in order to ascertain whether or not he has exhibited a disposition to reform, and hence is entitled to invoke the discretionary power lodged in them. This being manifestly the end sought to be accomplished, it is mandatory upon the courts to enforce the statute in every case, according to its spirit. It is not to the purpose to say that the provision does not prohibit the fixing of the minimum and maximum so that both will expire on the same date, because they may, in the nature of things approach each other until the difference disappears. This view is not in accord with the spirit

of the provision, and would defeat effectually the purpose had in view by the Legislature. It is entirely clear that the jury, in returning the verdict in question here, and the court, in pronouncing the judgment, ignored the spirit and purpose of the provision, with the result that the term of service imposed upon the complainant is as definite as if the jury had said, 'We, the jury find the defendant guilty, etc., and fix his punishment at confinement in the state prison for a term of two years.' "

Respectfully deferring to the learned court whose decision is quoted above, we are constrained to say that we are not greatly impressed by the reasoning upon which it bases the conclusion reached. That the sentence of the trial court is thought to be inconsonant with the spirit and purpose of the statute applied, is not sufficient reason for holding such sentence improper, if conformable to the obvious meaning of the statute; the purpose and spirit of the law is presumed conclusively to have been expressed by the Legislature in the language employed. The sentence here considered satisfies the words of the statute. It is not less than the minimum term, one year, nor greater than the maximum term, three years. How great the period of time intervening between the two should be rests primarily in the discretion of the trial court. To say that, as the minimum term approaches the maximum, a point may be reached which deprives the sentence of validity seems to be a pronouncement upon the occult. The sentence was proper.

[5] It is further contended by counsel for appellant that section 1548, Code 1915, inasmuch as it was passed subsequently to section 1546, supra, and covers the same ground, by implication repeals 1546; and that, since the indictment aptly charged the offense denounced in section 1548, the sentence imposed in this case should have been that provided by section 1548, namely from six to eighteen months. In this appellant is in error. The two statutes, while similar, are not identical. Repeals by implication are not favored, and will not be held to exist where any other reasonable construction can be placed upon the two

State v. Davisson, 28 N. M., 653

statutes involved, and it is generally held that there can be no implied repeal of the statute relating to one offense by a later statute relating to a different, though similar, offense.    25 R. C. L. 930.

Counsel for appellant has also complained of certain instructions given by the trial court.    The record displays that no objections were seasonably taken to the instructions complained of when given; consequently, the errors charged in that regard will not be considered.    The party objecting to instructions given must specifically point out the error in the instruction complained of.    State v. Gonzales, 19 N. M. 467, 144 Pac. 1144; State v. Orfanakis, 22 N. M. 110, 159 Pac. 674.

[6]    The appellant finally alleges error on the part of the trial judge in overruling a motion to quash the indictment.    It is apparent on the record that the indictment was proper; nothing of record appears to impute to it any irregularities or defect.    The motion to quash challenges the validity of the indictment upon matters dehors the record.    The motion to quash was proper, as a matter of practice, only so far as it reached and attacked alleged defects apparent in the record:

"In the absence of statutory regulations, a motion to quash an indictment can be granted only for defects apparent on the record, and not for extraneous facts, and matters dehors the record must be set up by plea in abatement." 14 R. C. L. 200.

We do not consider now the defects which counsel for appellant allege in their brief against the validity of the indictment, because these errors had to do with facts and occurrences extraneous to the record, and they were not properly interposed against the indictment by plea in abatement.

Finding no error in the record, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J. concur.