[No. 2997.   May 9, 1925.]

## FISHERDICK et al v. SAN JUAN COUNTY BOARD OF EDUCATION

### SYLLABUS BY THE COURT

1. Under chapter 7 of the School Code, chapter 148, Laws 1923, a proposal to issue and sell in April, 1924, school bonds voted in May, 1923, will not be enjoined for the sole reason of failure to issue and sell them on or before July 1, 1923.

2. Such construction of statute is to be favored as will not tend to defeat its useful purpose.

Appeal from District Court, San Juan County; Holloman, Judge.

Suit by C. W. Fisherdick and others against the San Juan County Board of Education, to enjoin sale of school bonds. Judgment of dismissal, and plaintiffs appeal. Affirmed.

A. M. Edwards, of Santa Fe, and Geo. F. Bruington, of Aztec, for appellants.

J. M. Palmer, of Farmington, for appellee.

### OPINION OF THE COURT

WATSON, J.   The issuance of $12,000 of school bonds was authorized at an election held May 12, 1923, in school district 18 of San Juan county. In April, 1924, the board of county commissioners caused publication of notice that the bonds so authorized would be sold on April 30, following. This suit was commenced by taxpayers of the district to enjoin the sale upon the sole ground that the board was without au-

thority to sell the bonds. Answer was filed by the board, and judgment was entered dismissing the complaint, from which the plaintiffs appealed.

[1] The case involves a consideration of certain provisions of the School Code, chapter 148, Laws of 1923, and particularly of Chapter 7, relating to school bonds. Section 702 provides that the right to issue bonds of rural districts shall be initiated by the filing of a petition with the board of county commissioners between March 1 and May 31, and at no other time. Section 703 provides that on receipt of the petition the board shall meet and determine the sufficiency thereof, and, if found sufficient, it shall order an election designating the time therefor, not less than 30 nor more than 50 days after such determination. Section 705 provides for 5 days' published and posted notice of the election. Section 709 provides for a canvass of the returns of the election within 10 days thereafter. Section 710 provides that within 5 days after the canvass the board shall publish a certificate of the canvass and of the result of the election. Section 711 provides that actions attacking the validity of the petition for the election, or the resolution approving it, may be commenced prior to 5 days preceding the date set for the election, and not thereafter; that the court shall designate the time for appearance and answer; and that such cases shall take precedence over all other court business. Section 712 provides that the suits to contest the validity of proceedings subsequent to the resolution of the board ordering the election, must be instituted within 10 days after publication of the result of the election. Section 714 provides that a transcript of all the proceedings shall be submitted to the Attorney General for approval or rejection. Section 715 provides that the Attorney General shall, after careful investigation of the legality of said election and proceedings, attach to the transcript his certificate of approval or rejection, and that, in case he approves such transcript authority to issue bonds under such election shall mature, and not otherwise, unless the validity of the bond proceedings has been established by prior court action; and further

provides "that bonds hereunder shall not be issued or sold after July first in *any* calendar year."

Appellants take the position that on July 1, 1923, following the election of May 12, 1923, the bonds not having been issued or sold, the power to sell ceased since it had not been exercised within the statutory time limit. They urge that it was the evident intent of the Legislature, by the several provisions referred to, that bonds should only be issued in the first half of the calendar year and that the provisions fixing the time for initiating and expediting the proceedings are calculated to accomplish the result before July 1 of the calendar year in which the election is held. They contend that the electors have a right to expect that the bonds which they have voted will be issued on or before the ensuing July 1, to the end that there may be a prompt accomplishment of the public purpose in view; that the favorable vote may have been influenced by such belief; that if the board may delay the issuance and sale of the bonds until the next calendar year, it may do so for any number of years, and until conditions have so changed that the proposed schoolhouse or other improvement may no longer be needed, or the proposed expenditure may no longer meet the approval of the electors.

The obvious objection to appellants' theory is that, while the Legislature might easily have limited expressly the issuance and sale of the bonds to the calendar year in which they were voted, it did not do so. By the letter of the statute, the time limit is on or before July 1 of *any* calendar year. It seems quite probable that the other provisions referred to were intended to make it possible, and it is of course usually desirable that the bonds be voted and sold in the same year. On the other hand, the interval between the permissable time of filing the petition and that of issuing the bonds is so short that there could be no assurance of being able to accomplish the result. If the petition were not filed until May 31, only the most prompt action on the part of the board of county commissioners and of the

Attorney General would permit the issuance and sale by July 1. If the petition were filed March 1, the earliest allowable date, any suit attacking the proceedings, however promptly disposed of in the district court, would accomplish delay beyond July 1, because of the right to appeal within six months. It is apparent that to construe the statute as appellants do would be to put it within the power of any dissatisfied taxpayer of the district, by bringing suit, or of the board of county commissioners or of the Attorney General, by delay unavoidable or otherwise, in any case, to defeat the purpose of the statute and the will of the majority of the electors. It is not to be presumed that such was the legislative intent. We therefore look further for an explanation of the peculiar provisions of this statute.

[2] Appellee calls attention to section 606, which provides that before July 1 of each year the state tax commission shall fix and certify the final budget allowances for the schools, and suggests that the requirement that the bonds shall not be issued after July 1 is intended to permit the adjustment of the budgets as affected by such sales. We note, from section 701, that the interest on school bonds is made payable semiannually; and, from section 718, that an annual tax is to be levied in the district for payment of the interest. It no doubt conduces to the smooth working of the budget and taxation system if the authorities may know by July 1 what interest requirements must be met during the ensuing year. This seems a reasonable view of the legislative intent in requiring all bonds to be issued on or before July 1. If a petition were filed after May 31 it would be reasonably certain that the proceedings could not be completed in time for the issuance of bonds by July 1. Hence the filing of petitions after that date is not allowed. Our examination of the statute has not disclosed a reason why petitions are not to be filed before March 1. If this limitation has any bearing on the inquiry, it would seem to indicate a legislative intent to limit the whole proceedings to as short a time as possible, thus giving some color to appellants' contentions. If such intent were clear, it would be our

duty to give effect to it. Being doubtful and purely speculative, we do not think it compels, or would support, a construction of the statute which in many, if not in most cases, would defeat its useful and necessary purpose. The record before us furnishes no clue to the cause of the delay. Assume that it was because of the deliberate purpose of the board of county commissioners to defect the proceedings. Had mandamus proceedings been brought against such board to compel its action, would it have been sufficient answer on the part of the board to allege merely that the statutory time for the issuance of the bonds had passed? We do not think so. So to hold would be, in effect, to confer the veto power upon the board of county commissioners. If that board could be compelled to sell the bonds, it may do so voluntarily. Township of Chickaming v. Carpenter, 106 U. S. 663, 1 S. Ct. 620, 27 L. Ed. 307.

It is our conclusion that school bonds may not be issued after July 1 and before January 1 of the succeeding year; that the several statutory provisions referred to are intended to expedite the procedure so that they may be ready for issuance the same year in which voted, but that, if not so issued, in the absence of any other objection, they may be issued the succeeding year. In our view, it was not the legislative intent that the will of the electors, lawfully expressed, should be defeated by mere unavoidable delays or obstructionist tactics. Undoubtedly the electors, after voting the bonds, may expect, and are entitled to, a reasonable dispatch in the business of negotiating them. In a situation of refusal to act, or of unreasonable delay amounting to refusal, the remedy by mandamus is available. The supposed case of an attempt to sell bonds several years after the election authorizing them, and under changed conditions, can be dealt with only when it arises. We do not think the possibility of such a situation should control our decision here.

The judgment, being consistent with the views herein expressed, should be affirmed, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.