309 P.2d 989

Jose ALVAREZ et al., Plaintiffs-Appellants,

v.

BOARD OF TRUSTEES OF LA UNION
TOWNSITE et al., Defendants-
Appellees.

Sidney M. METZGER, Plaintiff-Appellee,

v.

Mabel CHAVEZ et al., Defendants,

Jose R. Alvarez et al., Intervenors-
Appellants.

No. 6132.

Supreme Court of New Mexico.

Feb. 27, 1957.

Rehearing Denied April 30, 1957.

W. A. Sutherland, Las Cruces, for appellants.

Edwin Mechem, Thomas B. Rapkoch, Las Cruces, for appellees.

McGHEE, Justice.

The land involved in this litigation was granted by the federal government to the probate judge of Dona Ana County on November 11, 1925, to be held in trust for the occupants of the land at the time. This grant was made pursuant to the Federal Townsite Act of 1867, 43 U.S.C.A. § 718. The evidence is conclusive that the occupant of the land in question at the time of the grant was the Catholic Church. In order to implement the disposition of such lands to the occupants, the Territorial Legislature of New Mexico in 1882 set up certain procedures to be followed by the occupants claiming these lands. The most important of these statutes for purposes of this case is § 7–5–10, N.M.S.A.1953. In 1912 the New Mexico Legislature enacted another statute, § 7–5–4, N.M.S.A.1953, dealing with these townsite lands.

The essential facts in this case are as follows: In 1952 the Board of Trustees of the Townsite of La Union executed and delivered a deed purporting to convey the property in question to appellee Metzger, the Catholic Bishop of El Paso. Both parties to this suit agree that this deed was invalid since the Board failed to follow the prescribed statutory procedure for conveying townsite land. Subsequent to this conveyance appellants, taxpayers and residents of La Union, brought suit to have the deed from the Board to Bishop Metzger set aside and to quiet title. While this action was pending, Bishop Metzger brought suit against the probate judge of Dona Ana County seeking a conveyance of the land involved in this litigation. Notice of this suit was by publication. A default judgment was entered in favor of appellee, Bishop Metzger. Appellants, plaintiffs in the earlier action, moved to have this judgment vacated and to be allowed to intervene in the proceedings. This motion was granted and the two proceedings were consolidated. At the close of the case appellees' motion to dismiss was granted. The basis of the dismissal was that appellants had no right, title or interest in the property.

In the final analysis the outcome of this case depends upon a proper construction of sections 7–5–4 and 7–5–10, N.M.S.A.1953. The principal ground upon which appellants rely for reversal is that by virtue of § 7–5–10, appellee Metzger is forever barred from claiming the land in question. In substance this statute provides that lands granted under the Townsite Act to the corporate authorities or probate judge to be held in trust for the occupants must be claimed within sixty days after publication of the entry of the land in the land office.

It further provides that failure to file a claim within the specified time limit bars the occupant from ever after recovering the land. And upon such failure to file a claim the land "reverts to and becomes the property of the town." In the present case the predecessors in office of Bishop Metzger failed to file a claim to the property here in question within the prescribed time limitation.

If § 7–5–10 were the only statute involved in this litigation, appellants' position would be well taken, provided that such an absolute bar to the occupant of the land could be upheld. Almost identical absolute forfeiture provisions for failure to file a claim to townsite lands within the specified time limit have been struck down in Utah, Colorado and Nevada. The Supreme Court of Utah, in Hall v. North Ogden City, 1946, 109 Utah 325, 175 P.2d 703, held that the occupants of such townsite lands had an equitable ownership in the land occupied which became a vested right when the land was entered in the land office. The court went on to hold that this right could not be divested, even by the legislature, as long as the occupant remained in possession. The Supreme Courts of Colorado and Nevada have reached similar results. City of Pueblo v. Budd, 1894, 19 Colo. 579, 36 P. 599; Treadway v. Wilder, 1872, 8 Nev. 91. In this case we are not dealing solely with § 7–5–10, N.M.S.A.1953. We must also construe § 7–5–4, N.M.S.A.1953, enacted in 1912. This statute provides:

"Any land embraced in any townsite which has been entered as provided by the laws of the Untied States *and the title of which is vested in the probate judge,* in trust for the use and benefit of the several occupants of the land embraced within the said townsite, which has not been conveyed to the occupants, their heirs, executors, successors or assigns, who were entitled to the same at the time the entry of such land was made, or at the time patent was received from the United States, by reason of failure of said probate judge to give notice of such entry, or the receiving of said patent, *or by reason of such occupants, their heirs, executors, successors and assigns failing to make the statement and filing the same as required by law,* then in such case any such occupant, or the heirs, executors, successors or assigns of any such occupant, may file a suit in the district court in the county wherein such land is situated, to have his or its interest in said land, at the time of such entry, or the receiving of such patent, or the successor in title to the right of such occupant, declared and ascertained." (Emphasis supplied.)

Appellee relies upon the above statute since the occupant of the land involved in

this case failed to file a claim and received no conveyance of the property. Appellants, on the other hand, contend that this provision is not open to appellee since it provides that title must be in the probate judge, and that appellee's failure to file a claim within the specified time limit resulted in the title reverting to the town under § 7–5–10. Appellants point out that not only did the title revert to the town automatically, but the probate judge actually executed a deed to the property to the Board of Trustees in 1926. Both parties find support for their position in the case of Kemp Lumber Co. v. Whitlatch, 1916, 21 N.M. 88, 153 P. 1050, 1052. This is understandable in view of the fact that the opinion in the Kemp case contains statements which are inconsistent. Appellee relies on the following statement in the opinion:

"It was manifestly the intention of the Legislature by that section [§ 7–5–4] to make a particular exception to the prior law and allow town-site lands *which theretofore had reverted to the town* to be conveyed and possessed by persons who would have received deeds therefor, had not * * * the claimant failed to file his statement or claim." (Emphasis supplied.)

Appellants point out that the court went further and stated:

"But the Legislature clearly manifests its intention that such suits may be brought only where the legal title, as a matter of fact, stands in the name of the probate judge, as trustee, * * *"

The above statements are irreconcilable. If the property automatically reverts to the town when the occupant fails to file a claim, then the legal title cannot be in the probate judge.

The crux of this case is that portions of § 7–5–10 are repugnant to and irreconcilable with § 7–5–4. Section 7–5–10 provides that failure to file a claim within the sixty-day period forever bars the occupant from claiming and recovering the land. Section 7–5–4 provides that an occupant who has failed to file a claim within this sixty-day period can recover the land. Section 7–5–10 provides that failure to file a claim results in the property reverting to the town. Section 7–5–4 provides that upon failure to file a claim as provided under § 7–5–10, the occupant can then invoke § 7–5–4. But § 7–5–4 requires that the title be in the probate judge. If, as provided in § 7–5–10, the property reverts to the town when an occupant fails to file a claim within the specified time, then § 7–5–4 could never be utilized since this latter section requires that the legal title be in the probate judge.

Section 7–5–4 was enacted thirty years after § 7–5–10. It contained a repealing provision stating "all laws and parts of laws in conflict herewith are hereby re-

pealed." Provisions of this character leave open the question as to what laws are inconsistent. As a result, the rules of law which apply to implied repeals generally will also be applicable where repeal is caused by use of the expression quoted above. Crawford, Statutory Construction (1940), § 307.

Courts do not look with favor on implied repeals. They seek to avoid repeals by implication by resort to any reasonable and fair interpretation under which all sections of a statute can stand together. State v. Davisson, 1923, 28 N.M. 653, 217 P. 240. The inconsistency or repugnancy between two statutes necessary to supplant or repeal the eariler one must be more than a mere difference in their terms and provisions. There must be what is often called such a positive repugnancy between the provisions of the old and the new statutes that they cannot be reconciled and made to stand together. United States v. Greathouse, 1897, 166 U.S. 601, 17 S.Ct. 701, 41 L.Ed. 1130. But the repugnancy or inconsistency need not be between every provision of the two acts, as implied repeals may operate on parts of a statute as well as on it in its entirety. City of Bisbee v. Cochise County, 1934, 44 Ariz. 233, 36 P.2d 559. The construction of statutes should be accepted which will make them effective and productive of the most good, as it is presumed that these results were intended by

the legislature. Collins v. State of New Hampshire, 1898, 171 U.S. 30, 18 S.Ct. 768, 43 L.Ed. 60.

Tested by the above rules of statutory construction, we find it mandatory to hold that two provisions of § 7–5–10 are repugnant to and irreconcilable with § 7–5–4 and were therefore repealed by the latter section. The absolute bar to an occupant who failed to file a claim within the specified time limit was repealed by § 7–5–4. So too was the provision in § 7–5–10 that upon failure to file a claim the property reverted to the town. This must be so, because if failure to file resulted in the property reverting to the town, the title would no longer be in the probate judge and § 7–5–4 could never be utilized.

This court will not impute an intention to the legislature to enact a useless statute. As pointed out in Fisherdick v. San Juan County Board of Education, 1925, 30 N.M. 454, 236 P. 743, the construction of statutes which will not defeat their useful purpose is favored. Consequently, the title to the property in question was vested in the probate judge in trust at the beginning of this litigation. It matters not that in 1926 the probate judge had actually executed and delivered a deed to the property to the Board of Trustees of La Union. The conveyance was unauthorized and § 7–5–4 cannot be circumvented by improper

conveyances by the probate judge. To hold otherwise would be to render the section ineffective.

Appellants contend also that appellee Metzger is foreclosed from relief under the doctrine of election of remedies. Appellants' theory is that appellee cannot invoke § 7–5–4 since he made an election in seeking a deed from the Board of Trustees and in defending the action brought by appellants. We find no merit in this contention. Seeking the conveyance from the Board of Trustees was an extra-judicial act. It is possible for an extra-judicial act to operate as an election of remedy. But we believe the better rule is that stated at 18 Am.Jur. "Election of Remedies", § 16:

> "Acts prior to the actual commencement of legal proceedings indicating an intention to rely upon one remedial right do not constitute an election which will preclude the subsequent prosecution of an action or suit based upon an inconsistent remedial right, unless the acts contain the elements of an estoppel in pais."

Certainly the act of appellee in seeking and obtaining a conveyance from the Board of Trustees in this case does not contain the elements of an estoppel in pais. For the elements necessary to constitute such an estoppel see State ex rel. Fitzhugh v. City Council of City of Hot Springs, 1952, 56 N.M. 118, 241 P.2d 100.

Nor did the judicial act of defending the action brought by appellants constitute an election of remedies. In order to invoke the doctrine of election of remedies against a litigant, that litigant must have had available to him alternative and inconsistent remedies. Williams v. Selby, 1933, 37 N.M. 474, 24 P.2d 728. The only remedy available to appellee was that provided in § 7–5–4. And this was the remedy sought by the appellee in his first affirmative judicial act of seeking a conveyance of the property from the probate judge.

The final decree of the trial court in ordering and directing the probate judge of Dona Ana County to execute and deliver a deed to the property in question to appellee, Bishop Metzger, was correct for the reasons stated in this opinion.

The judgment should be affirmed. It is so ordered.

LUJAN, C. J., and SADLER, COMPTON and KIKER, JJ., concur.