226 P.2d 477

**CROSTHWAIT et al. v. WHITE et al.**

**No. 5338.**

Supreme Court of New Mexico.

Jan. 15, 1951.

H. E. Blattman, John T. White, Las Vegas, for appellants.

H. A. Kiker, Santa Fe, Manford W. Rainwater, Tucumcari, for appellees.

McGHEE, Justice.

Acting under the provisions of Chapter 196, 1947 Session Laws, Sec. 15-3305 to 15-3311 of the supplement to the 1941 Compilation, a majority of the qualified voters of precinct 12 and part of another in the southern part of Harding county filed a petition with the Board of County Commissioners of said county reciting the necessary facts as prescribed by section 1 of said Act, praying that an election be called to determine whether such part of said county should be annexed to the adjoining county of Quay.

The Board of Commissioners found the petition was in proper form and had been signed by the requisite number of qualified electors, and then ordered the election to be held.

The plaintiffs thereupon brought this action attacking the sufficiency of the petition and the constitutionality of Chapter 196, supra.

Sections 1 and 2 of Chapter 196, supra, read as follows:

"Whenever, because of the location and conditions of roads, or the existence or non-existence of transportation facilities, it will be more convenient for the residents of any portion of a county to travel to the county seat of some other contiguous coun-

ty, and because of such location and condition of roads or the existence or nonexistence of transportation facilities, it will be more convenient and economical for such other county to render governmental services to such portion of such other county, the portion of the county so affected may be annexed to such other county in the following manner:

"A petition executed by at least fifty-one per cent (51%) of the qualified electors residing within the portion of the county proposed to be annexed shall be filed with the county commissioners of the county in which such portion is located. Such petition shall set forth the facts showing the existence of the conditions described in Section 1 * * * hereof and shall accurately set out the boundaries of the portion of the county proposed to be annexed."

The trial court made findings of fact to the effect that all of the conditions prescribed in section 1 were present, and that the requirements of sections 2 and 3, so far as the petitioners and the commissioners were required to act to the time of filing of this action, had been performed. Conclusions of law were stated that the act was constitutional and that judgment should go for the defendants. In due course, such judgment was entered and this appeal followed.

We will first consider the claim that the trial court erred in refusing to admit in evidence a second petition addressed to the commissioners asking that certain of the names be withdrawn from the original petition for the election.

This second petition was filed after the commissioners had acted on the original petition and ordered the election. While there is a division of authority on the subject, this court is committed to the rule that while the signers of such a petition may withdraw their names before the body to which it is addressed has acted on it, they may not do so afterwards. Territory ex rel. Stockard v. City of Roswell, 16 N.M. 340, 117 P. 846, 35 L.R.A., N.S., 1113; In re Bernalillo County Drainage District No. 1, 25 N.M. 171, 179 P. 233. The trial court did not err in refusing to admit the exhibit.

The plaintiffs also say the trial court erred in finding that more than 51% of the qualified electors of the area involved had signed the petition. Our ruling that the petitioners could not withdraw their names after the commissioners had acted on the original petition leaves more than 51% of the electors asking for the election, and the point must be ruled against the plaintiffs.

This brings us to a consideration of the attack made against Chapter 196, supra, on the following constitutional grounds:

(a) The subject of the act is not clearly expressed in its title, as required by Art. 4, Sec. 16, of the Constitution of New Mexico.

(b) The act embraces more than one subject, in violation of the same Article and Section.

(c) The act is a local or special law changing county lines, not creating a new county, in violation of Art. 4, Sec. 24, of the Constitution of New Mexico.

(d) The act is so vague, indefinite, uncertain, and incomplete that it is incapable of enforcement.

Article 4, Sec. 16, Constitution of New Mexico, provides in part: "The subject of every bill shall be clearly expressed in its title, * * * but if any subject is embraced in any act which is not expressed in its title, only so much of the act as is not so expressed shall be void. * * *"

The title in question is as follows: "An Act Providing for the Change of County Lines and Boundaries, and the Annexation of Portions of Counties."

Section 3, Chapter 196, supra, provides that immediately upon the filing of a petition for an election the county commissioners shall cause a notice to be published in some newspaper of general circulation in the county affected, and that within thirty days after the publication thereof any resident of either county affected, on behalf of himself and all others similarly situated, may bring an action in the district court of the county in which the area proposed to be annexed is located, alleging that the petition has not been executed by the requisite number of signers, or that the description of the area to be annexed is not accurately described or that the conditions described in section 1 of the act do not exist. It then provides that the Judge, after hearing, shall make a determination as to whether the allegations of the petition are well taken, and if he determines them to be true he shall make an order, and if the cause be not stayed it shall be the duty of the commissioners to call an election within thirty days within the area proposed to be annexed, and to publish notice thereof, specifying the polling places. It further provides that at such election all qualified electors who reside within the area proposed to be annexed shall be entitled to vote.

Section 4 provides for the number of election officials and the form of ballot.

Section 5 provides for counting the ballots and certifying the results to the county commissioners, the canvass of the vote by such commissioners, and that if a majority of those voting shall have voted for the annexation, the area described in the petition shall be annexed to the other county as proposed.

Section 6 provides for the publication of a certified copy of their certificate of election in newspapers of general circulation in both counties, and the delivery of a copy of such certificate to the State Tax Commission and to the County Assessor of each county affected.

We quote section 7 in full: "If the proposition carries, the area described in the petition shall be and become a part of the county to which annexation was made on January 1 of the next odd numbered year. Provided that whenever there shall be any outstanding indebtedness of the county or school district in which such area was originally located, the annexation shall not be complete for debt service purposes until such indebtedness is discharged in full."

We take the following from the plaintiffs' brief which fairly summarizes their position as to the title: "We submit that this case falls within the rule of restrictive titles; that the title is not entitled to the broad construction given a general title. This title concerns county lines, boundaries, and annexation of parts of counties. Under this act it is sought to provide for arbitrary division of a county, a petition therefor, an election, a possible law suit, and to adjust the indebtedness of the parts annexed. Can it be said that notice of all this is contained in the title?"

In State v. Ingalls, 18 N.M. 211, 135 P. 1177, 1178, the court gave careful consideration to an attack on a statute providing for a state license on automobiles and the disposition of the funds received for road building purposes. The title of the act there attacked read as follows: "An Act to Provide for State License on Automobiles." Laws 1912, c. 28. The attack on the statute was that the title embraced more than one subject and that the subject was not clearly expressed in the title. The court stated, among other things:

"The aim and necessity of this constitutional provision is apparent. The reason for its existence is a matter of history in nearly all our states. Its purposes, as outlined by Mr. Cooley, are:

"First, to prevent hodgepodge or 'logrolling' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and third, to fairly apprise the people of the subjects of legislation, in order that they may have opportunity of being heard thereon. * * *"

And further in the case it is said: "In our opinion, the true test of the validity of a statute under this constitutional provision is: Does the title fairly give such reasonable notice of the subject-matter of the statute itself as to prevent the mischief intended to be guarded against? If

so, the act should be sustained. The reason of the rule not applying to such cases, the rule itself does not apply."

Later the sufficiency of the title to a legislative act was questioned in State v. Gomez, 34 N.M. 250, 280 P. 251, and there Mr. Justice Simms collected all of the New Mexico cases on the point and then made the following statement which was only recently approved by us in Albuquerque Bus Co. v. Everly, 53 N.M. 460, 211 P.2d 127: "Each case must be decided on its own set of facts and circumstances. There are certain considerations, however, which the courts should always keep in mind. To the legislative branch of our government is committed the drafting of statutes. Courts should be slow to interfere by pronouncing the work of the Legislature insufficient. It often happens that one person would entitle the same act in a different way from another. To some minds, the title of an act should be so definite and nice in its definitions and distinctions as to be an index of the act itself; to others, this is unnecessary, and a more general and sweeping treatment of the subject is all that is required. We can all agree, however, on the soundness of the constitutional inhibition against surprises, concealed or 'joker' provisions in bills which might deceive both the lawmakers and the general public."

The plaintiffs say that in addition to providing for the petition and annexation of a county, the legislature provided for a law suit and a court trial without any intimation of such latter purpose in the title. We consider the suit and court trial as an incident of the annexation proceedings and therefore not necessary to be set out in the title. Grant v. State, 33 N.M. 633, 275 P. 95. Even if we are mistaken in this, the saving clause in the constitutional provision that only so much of the act as is not mentioned in the title shall be void would save the act. If it be conceded that the plaintiffs were entitled to their day in court, they would have the right to seek an injunction to prevent the unlawful dismemberment of their county even in the absence of specific statutory authority. State ex rel. Dow v. Graham, 33 N.M. 504, 270 P. 897.

The contention that the inclusion of the part providing for a court hearing without mention thereof in the title renders the statute unconstitutional is not well taken.

The plaintiffs further contend that failure to mention in the title the provision as to bonded indebtedness of the county or school district in the area makes the entire act void. There is nothing in the record intimating that either the county of Harding or a school district in the area sought to be annexed has any bonded indebtedness. There is no necessity, therefore, for considering the debt question. Roswell Nursery Co. v. Mielenz, 18 N.M.

417, 137 P. 579; State ex rel. Martinez v. Holloman, 25 N.M. 117, 177 P. 741.

Even if that portion of Section 7 relating to county or school district indebtedness be void because not mentioned in the title, still it would not, under the saving clause above referred to, make the act unconstitutional. The apportionment of the indebtedness was not a necessary part of the annexation statute. 14 Am. Jur., Counties, Sec. 13, pp. 192 and 193. In that section it is said: "Detaching territory from an existing county which carries a burden of debt frequently results in hardship to the residents of its remaining territory, since they are required to meet obligations that otherwise would be met by a greater number of persons. For this reason, the legislature in changing county boundaries frequently provides for an apportionment of indebtedness as between the county which suffers a depletion in area and the one which has its area enhanced. Subject to some early decisions to the contrary, it is the rule that such apportionment of liabilities need not be made at the time of the change in county boundaries, but may be carried out by a subsequent act of the legislature."

This brings us to a consideration of the most serious challenge to the act, that it is a local or special law changing county lines, not creating a new county, in violation of Art. 4, Sec. 24, of our constitution. The part of such section which is here material reads: "The legislature shall not pass local or special laws * * * changing county lines, except in creating new counties."

The constitution does not say the legislature may not change county lines except in creating new counties, but only that it may not do so by local or special laws. State ex rel. Dow v. Graham, supra.

Does the fact that the part of any county meeting the conditions prescribed in section 1, chapter 196, supra, and complying with other necessary provisions of that act may, by a majority vote of its qualified electors, secede and become a part of a consenting adjoining county make it a general and not a special act?

This court had the matter of what are general and special laws before it in State v. Atchinson T. &. S. F. R. Co., 20 N.M. 562, 151 P. 305, in a case involving the validity of an act providing for a one mill tax levy for feeding prisoners in first class counties. The counties of Bernalillo and San Miguel were declared by legislative act to be first class counties and no others were included. Neither was provision made for other counties joining the select class when they had sufficient population or assessed valuation; neither was there a provision to meet changed conditions. In other words, the class was created

and closed by statute. The court held the act was special and therefore void.

In that case the court approved the following definitions of general and special laws by 1 Lewis' Sutherland Stat.Const. (2d Ed.) Sec. 197:

" 'Laws of a general nature are such as relate to a subject of a general nature, and a subject of a general nature is one that exists or may exist throughout the state, or which affects the people of the state generally, or in which the people generally have an interest.' * * *

" 'Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances.' "

The doctrines announced in this case were followed in Scarbrough v. Wooten, 23 N.M. 616, 170 P. 743, and have been accepted as the settled law of this state in all subsequent decisions on the question of whether an act is general or special. See Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462. The difficulties arise in the application of the rules to specific legislative acts.

Under the questioned act a majority of the qualified electors of any district where the conditions obtain as set out in section 1 thereof may, with the consent of an adjoining county, secede and become a part of such other county by using the machinery provided. There is nothing in the record to show that such conditions do not obtain in precincts or areas in all or many counties of this state. From our knowledge of the geography of the state and other conditions, there are many counties in which such conditions do exist.

It is our duty to sustain acts of the legislature in such cases as this one when there is to be found any reasonable basis for the distinction employed, the wisdom of the law being for the legislature. Hutcheson v. Atherton, supra. We are unable to say the classification made is unreasonable.

As the statute is available to the inhabitants of any area in the state where the conditions prescribed in section 1 of the act obtain, we conclude that we have here a general and not a special law. It is a matter of common knowledge that the people formerly living in an area in Socorro county, by using the machinery of the act, have seceded and placed such territory in Sierra county.

The claim that the act is void on account of being vague, indefinite, etc., is not well taken.

The judgment will be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, J., concur.

COMPTON and COORS, JJ., not participating.