265 P.2d 354

## YOUREE v. ELLIS et al.
### No. 5600.

Supreme Court of New Mexico.

Jan. 7, 1954.

Noble, Spiess & Noble, Las Vegas, for appellant.

H. A. Kiker, Howard F. Houk, Henry A. Kiker, Jr., Santa Fe, for appellees.

SADLER, Justice.

This is an appeal by plaintiff (appellant) from an order of the district court of San Miguel County dismissing a complaint challenging certain proceedings before the Board of County Commissioners of that county initiated pursuant to the provisions of L.1947, c. 196, 1941 Comp., § 15–3305 et seq., 1949 Supplement, to detach a described portion of the county named and attach it to Harding County.

Shortly prior to February 12, 1951, a petition was filed before the Board of County Commissioners of San Miguel County pursuant to the enabling act mentioned above seeking to annex a large section of San Miguel County to Harding County. The Board of County Commissioners caused notice of the filing of the petition to be published in a newspaper of general circulation in each of the counties affected. Thereafter, R. E. Youree, the plaintiff (appellant) herein, a resident of San Miguel County, filed suit in the district court of San Miguel County to contest the petition upon the claim that statutory grounds for annexation did not exist and that the petition lacked the genuine signatures of at least fifty-one (51%) per cent. of the bona fide residents of the area affected. He joined as defendants certain of the signers on

the petition as well as the Board of County Commissioners of San Miguel County. An answer to the complaint was filed putting the case at issue. That suit was at issue when the events next related took place and is still pending.

Thereafter, and shortly prior to June 5, 1951, a second petition was filed, in all respects almost an exact counterpart of the first one, before the Board of County Commissioners of San Miguel County, seeking annexation to Harding County of approximately 1,000,000 acres of San Miguel County, being the same land or area described in the first petition filed, save and except eight described sections, approximating 5,000 acres included in the first petition but omitted from the second one. A like notice of the filing of this petition was given pursuant to the act by publication in newspapers of general circulation in each of the two counties mentioned, as in the case of the first petition. In the second petition, as in the case of the first, certain signers on same, as well as the Board of County Commissioners of San Miguel County, were made parties defendant. The cause was docketed as No. 14,802 on the civil docket of said court. An answer was filed to this petition, as to the first one.

The primary basis of the contest was that statutory grounds for the annexation did not exist in that the petition did not carry the signatures of at least fifty-one (51%) per cent. of the qualified electors residing in the area sought to be annexed; and, further, that many of the signatures on the petition were not the genuine signatures of the persons they purported to be. It also was alleged in the complaint of contest that the enabling act under which the annexation proceedings were initiated was invalid on several grounds to be hereafter noticed.

The trial court made findings of fact and conclusions of law favorable to the proponents of annexation, holding that the petition therefor bore the necessary number of signatures and that the grounds authorizing annexation as set forth in the statute actually existed. It entered an order dismissing the contest. This appeal followed.

In order to understand the questions presented and argued, it will be necessary to set forth the material portions of the questioned act. They follow:

"Section 1. Whenever, because of the location and conditions of roads, or the existence or non-existence of transportation facilities, it will be more convenient for the residents of any portion of a county to travel to the county seat of some other contiguous county, and because of such location and condition of roads or the existence or non-existence of transportation facilities, it will be more convenient and economical for such other county to render governmental services to such portion of such

other county, the portion of the county so affected may be annexed to such other county in the following manner:

"Section 2. A petition executed by at least fifty-one per cent (51%) of the qualified electors residing within the portion of the county proposed to be annexed shall be filed with the county commissioners of the county in which such portion is located. Such petition shall set forth the facts showing the existence of the conditions described in Section 1 hereof and shall accurately set out the boundaries of the portion of the county proposed to be annexed.

"Section 3. Immediately upon the filing of such petition, it shall be the duty of the county commissioners with whom such petition is filed to cause a notice to be published in some newspaper or newspapers of general circulation in each county affected. Within thirty (30) days after the publication of such notice, but not thereafter, any resident of either of the counties affected, on behalf of himself and all others similarly situated, may bring an action in the district court of the county in which such area proposed to be annexed is located, against any one or more of the signers of the petition, alleging that the petition has not been executed by the requisite number of signers or that the description of the

area to be annexed is not accurately described or that the conditions described in Section 1 hereof do not exist.

"The Judge, after hearing, shall make a determination as to whether the allegations of the petition are well taken. If he shall determine that the allegations of the petition are well taken, he shall enter an Order, and if the same be not stayed, it shall be the duty of the county commissioners to call an election to be held within 30 days within the area proposed to be annexed, as described in such petition, and shall cause a notice of election to be published two times in a newspaper of general circulation in the area to be annexed, the last publication thereof to be at least seven (7) days before the date set for the election. Such notice shall specify the polling places, which polling places shall be not fewer than there were in said area at the last general election. At such election all qualified electors who reside within the area proposed to be annexed shall be entitled to vote.

\*   \*   \*   \*   \*   \*

"Section 7. If the proposition carries, the area described in the petition shall be and become a part of the county to which annexation was made on January 1 of the next odd numbered year. Provided that whenever there

shall be any outstanding indebtedness of the county or school district in which such area was originally located, the annexation shall not be complete for debt service purposes until such indebtedness is discharged in full."

First, it is claimed the statute authorizing annexation is void for uncertainty and ambiguity. The effect of our former decision in Crosthwait v. White, 55 N.M. 71, 226 P.2d 477, 483, is dismissed with the suggestion that, although we did hold against a claim of vagueness and uncertainty in that decision, new and different claims of vagueness and uncertainty are now asserted. Accordingly, we shall proceed to examine the new claims in the respects mentioned. Whatever the claims of vagueness in that case, they must have been wholly lacking in merit for they were disposed of in summary language, as follows:

"The claim that the act is void on account of being vague, indefinite, etc. is not well taken."

It is strongly urged the whole act is void because of an invalid provision for notice. The questioned language is found in section 3 of the act and reads:

"Immediately upon the filing of such petition, it shall be the duty of the county commissioners with whom such petition is filed to cause a notice to be published in some newspaper or newspapers of general circulation in each county affected."

Counsel having set it out in their brief, then inquire:

"What is the Board of County Commissioners required to do? Cause a notice to be published. What sort of notice are they required to publish? What must the notice say or what facts must it contain? The statute is entirely silent. We think there can be no doubt but that the publication of a notice is jurisdictional. Unless the notice required by the statute is published, the Board of County Commissioners certainly has no jurisdiction to proceed further."

Let us answer the most pertinent inquiry put by counsel as to what sort of notice the board is required to publish. Obviously, a notice of the filing with it of the petition mentioned in the statute, citing it, and its general purpose and object. It should describe the portion of the county proposed to be detached from the named county and attached to the other; and announce that any resident of either county affected within thirty days after publication, but not thereafter, could bring the action mentioned in the enabling statute, in the district court of the county in which the affected area lies challenging, on grounds named in the act, the right to the annexation sought. The notice published

of the filing of the petition here involved appears in the record before us. We have examined it and find it contains all essential elements sufficient to vest jurisdiction in the district court to proceed in the matter upon the filing of a petition invoking such jurisdiction.

■■ We may agree with counsel that publication of this notice is jurisdictional and, also, go further and suggest that it would be better if the statute had gone into greater detail as to the makeup of the notice, number of times to be published, if more than one was intended and perhaps other data. But the very direction for publication of a notice without more, except as to requirement for publication in each county affected which was done, leaves little to doubt or speculation on what the notice is to contain. Certainly, it was sufficient to bring the plaintiff before the court in protest on two different occasions. Indeed, exception is not taken as to form or sufficiency of the publication to give proper notice. We rule the objection to the statute on the ground of vagueness is not well taken and should be overruled. 66 C.J.S., Notice, § 16a, p. 653; Mollette v. Board of Education, 260 Ky. 737, 86 S.W. 2d 990; Thompson v. Tafel, 309 Ky. 753, 218 S.W.2d 977; In re Hansen's Guardianship, 229 Iowa 914, 295 N.W. 429.

The plaintiff also thinks there is a deficiency in the act in that there is no uniform method for calling an election and no method at all provided for an election where there is no contest. He points out that in section 3 the election to be held is to be called after a determination following contest whether the allegations of the petition are true. It is said the judge obviously can make no determination if there is no contest to bring about a hearing since this is to be precipitated only by a contest. We think it is a strained construction of the act to say there can be no hearing to determine the existence, or not, of the decisive grounds upon which alone the court is authorized to order an election on annexation. Of course, if a contest is filed the hearing mentioned stems from the complaint filed initiating the contest.

But what of the case where no contest is filed? It is to the situation thus resulting that counsel direct their argument. They would hold the court helpless to proceed absent a contest and thus render the legislation meaningless and nugatory. In the event there is no contest the case is as if on default so far as objections to the proposed annexation are concerned. This does not mean, however, that the proceeding must come to an abrupt halt. It would seem somewhat anomalous to hold, if there be objections to the proposed annexation, means for its accomplishment are to be found in the act, but if there be no objections, a condition calculated to promote achievement of the end sought, it brings

about instead the effort's early demise! Such a conclusion should be announced only if unavoidable. We think it is not.

■ If a contest be filed the hearing provided for takes place as provided in the act. If no contest be filed then the proponents of the proposed annexation, upon calling the matter by some appropriate pleading to the attention of the district court of the county where the annexation proceedings are pending, may initiate the hearing contemplated by the act. Upon such hearing, even though the relief sought is unopposed, the court would have to determine whether there were jurisdictional grounds for the annexation as its authority to proceed further as set out in the act. So it seems to us, where no contest is filed, by necessary implication the hearing mentioned in the act may be initiated— unless all jurisdiction to proceed is lost through failure of some one to object or protest. Compare Baker v. Johnson, 35 N.M. 293, 295 P. 421. We are satisfied such is not the case.

■ But as counsel for defendants aptly inquire, why should we concern ourselves at this time, and why should plaintiff be furnished an answer to his inquiries in this behalf, since a contest was filed by him— not once, but twice? Is it not enough to proceed in the case in the light of existing facts, rather than to test validity of the act by supposed facts which have not tran- spired and, indeed, may never transpire? Wherein is the plaintiff harmed or prejudiced by this supposed deficiency in the act? Before he can complain, the plaintiff must place himself in the class of persons said to be affected by the claimed invalidity. Asplund v. Alarid, 29 N.M. 129, 219 P. 786; In re Gibson, 35 N.M. 550, 4 P.2d 643.

■ The plaintiff also claims a deficiency in the act as to what judge shall, at the hearing provided in the act, determine whether the allegations of the petition be true. We sense no confusion about the matter. Naturally, it is the judge of the district court of the county in which the proceedings are initiated, as directed in section 2 of the act. A look at the enabling act as a whole can leave no doubt on this point.

■ It is also urged the questioned act violates Const. Art. 4, § 24, as being special legislation. It was held not to be in Crosthwait v. White, supra, though not on the same ground here urged. The claim that it is so here rests on the untenable position that the act creates two classes, one where annexation can be accomplished in event of a contest and another where it cannot absent a contest. Thus, says plaintiff, the "statute is one not general in its application to a particular class and to all the classes within like circumstances," to use the language of his brief. Since

we have held only a strained construction would view the act as complete in its machinery for annexation where somebody objects but wholly lacking in such machinery where nobody objects, this claim of invalidity must fail.

 Much time is spent in argument to demonstrate an absence of the necessary number of signatures of bona fide residents on the first petition filed. The basis of the attack on the first petition is incident to a later contention that the second petition is nothing more than an amendment of the first, itself bad on the claim that under Crosthwait v. White, supra, signatures may neither be withdrawn from nor added to the petition filed. Any defects in the first petition filed may be laid aside since the trial court held on substantial evidence that the second petition was not an amendment of the first but an entirely new, independent and distinct petition filed after discovery that the jurisdictional grounds supporting an annexation did not exist as to the sections or area omitted from the second petition. We thus have confined ourselves to the sufficiency of the second petition.

We have carefully considered the contentions of counsel and do not see in the legislation involved the shortcomings claimed to exist in it. The trial court's findings of the decisive facts warranting an election on the question of annexation rest on substantial evidence and support its order dismissing the cause of action in contest set forth in the complaint. Accordingly, the judgment should be affirmed.

It is so ordered.

McGHEE, C. J., and COMPTON, LUJAN, and SEYMOUR, JJ., concur.